IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE LUNA, as Administratrix of the Estate of )<br>Charles Jason Toll, deceased, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>)<br>RICKY J. BELL, Warden of Riverbend Prison; )<br>GAELAN DOSS, Correctional Officer; and )<br>CAPTAIN JAMES HORTON, )<br>all individually, )<br>)<br>Defendants. ) | CASE: 3:11-0093<br>JURY DEMAND<br>Judge Nixon<br>Magistrate Judge Knowles<br><br>**Oral Argument Requested** |

## DECLARATION OF JEFFERY SHANE ROBERTS

I, Jeffery Shane Roberts, in accordance with the provisions of 28 U.S.C. §1746, declare as follows:

1. I am a competent adult who is capable of making the statements set forth herein.

2. I am currently a licensed Tennessee lawyer in good standing who has actively practiced law in Tennessee since 1999. My BPR number is 020263.

3. I am one of the attorneys for the plaintiff in this civil rights case.

4. When this case was being prepared for trial a set of written Requests for Production of Documents was served upon the defendants Ricky J. Bell and Captain James Horton in accordance with Rule 34 of Federal Rules of Civil Procedure.

5. The first request asked for a copy of the personnel file of William Amonette, who at the time was a co-defendant.

EXHIBIT 7

6. The fifth request asked for all reports, memorandums, documents of any sort prepared by any employee of the State of Tennessee as pertains to the death of Mr. Toll including but not limited to reports of internal affairs whether maintained electronically or in written form.

7. The sixth request asked for all emails and other written communications which in any way pertained to the death of Mr. Toll from August 17, 2010 through date including but not limited to email traffic between the various defendants, supervisors, and any other employee of the Tennessee Department of Correction or employee of the State of Tennessee. Included within this request that all backup computers or software be searched for relevant material pertinent to this question so as to acquire information which may have been deleted on regular servers or other computer processors or backup software.

8. On April 25, 2011, Arthur Crownover, counsel for the defendants provided a letter with the purported contents of William Amonette's personnel file.

9. The material purporting to be the contents of William Amonette's personnel file was Bates stamped with numerals in sequential order.

10. I prepared for the trial of this civil rights case with the confidence and knowledge that the entire contents of William Amonette's personnel file had been provided and delivered to my co-counsel on April 25, 2011.

11. This trial occurred in August 2013 and it concluded with entry of judgments in favor of the defendants on August 26, 2014.

12. On July 28, 2014 *The New York Times* newspaper published a story about this case.

13. The story that was published referenced a resignation letter that was written by a corrections officer.

14. I was contacted by the plaintiff Jane Luna by telephone after the story ran and she inquired about the resignation letter. I told her I did not know what she was asking about.

15. On August 7, 2014 I received an email transmission from Jane Luna that she forwarded to me. The forwarded email was from Neysa Taylor, an employee with the Tennessee Department of Corrections. Attached to Ms. Taylor's email was a resignation letter purportedly written by William Amonette on February 7, 2011.

16. I became aware for the first time of the content of William Amonette's resignation letter when I read the forwarded email and its attachment on August 7, 2014.

17. Upon receipt and after reading the forwarded email's content I reviewed the Bates stamped material that had been provided by Arthur Crownover on April 25, 2011. At no time did I find a copy of William Amonette's resignation letter dated February 7, 2011.

18. The Bates stamped documents are sequentially numbered 000179 through 000309.

19. At no time during the course of discovery in this case did I receive any supplement to the Request for Production of Documents that included a copy of William Amonette's resignation letter dated February 7, 2011.

20. Upon reading the content of William Amonette's resignation letter dated February 7, 2011 I was astonished to see that he accused Ricky Bell, the warden, of falsification of records.

21. Upon reading the content of William Amonette's resignation letter dated February 7, 2011 I was astonished to see that he had questions about the Charles Toll case in particular and the perceived lack of investigation.

22. In the event I had received this letter in the course of discovery it would have had a substantial and material effect on the conduct of depositions and upon the presentation of evidence at the trial of this civil rights case.

23. I am confident that the issue of credibility would have been further examined by the jury if the resignation letter of William Amonette dated February 7, 2011 had been provided to the plaintiff in discovery.

24. As intent was an essential element of this trial, credibility of the witnesses was of paramount importance. The contents of Mr. Amonette's resignation letter would have been an essential piece of evidence to assist the jury in weighing same.

25. I have concluded that the plaintiff did not receive a fair trial and that the outcome of this case was affected due to the failure or refusal to provide the resignation letter of William Amonette dated February 7, 2011.

26. I believe substantial justice was denied due to the failure or refusal to provide the resignation letter of William Amonette dated February 7, 2011.

27. I declare under penalty of perjury that the foregoing is true and correct. Executed this 21 day of August, 2014.

_____
Jeffery S. Roberts