IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE LUNA, as Administratrix of the Estate of Charles Jason Toll, deceased, | )<br>)<br>) |
| Plaintiff, | )  No. 3:11-cv-00093<br>)<br>)  Judge Nixon |
| v. | )  Magistrate Judge Knowles<br>) |
| RICKY J. BELL, Warden of Riverbend Prison, et al., | )  JURY DEMAND<br>)<br>) |
| Defendants. | ) |

## ORDER

Pending before the Court are Plaintiff's Motion to Reopen Case (Doc. No. 173) and Plaintiff's Rule 60(b) Omnibus Motion for Relief from the Judgments Entered in Favor of Defendants Ricky J. Bell, Gaelan Doss, and James Horton and Motion for Relief from Order Denying New Trial (Doc. No. 174) ("Motions"). The Court granted the Motions by order entered February 12, 2015 for the reasons stated below.

I. BACKGROUND

Jason Toll died during a cell extraction at Riverbend Maximum Security Institution. Following Mr. Toll's death, Plaintiff—his mother—brought this action as the Administratrix of Mr. Toll's estate against Defendants Correctional Officers Brandon Jackson, Gaelan Doss, Darrell Freeman, Bruce Bishop, Jr., Jeffrey Reckart, Corporal Sean Stewart, Captain James Horton, and Warden Ricky J. Bell. (Doc. No. 52.) Plaintiff alleged claims on Mr. Toll's behalf pursuant to 42 U.S.C. § 1983 for excessive use of force and failure to train in violation of Mr. Toll's Fifth, Eighth, and Fourteenth Amendment rights. (Id. ¶¶ 94–123.) On Plaintiff's motion, the Court dismissed Defendants Reckart, Jackson, Stewart, Freeman, and Bishop from this

1

action. (*See* Doc. No. 152.) The Court held a jury trial from August 13, 2013, to August 23, 2013. At the conclusion of the trial, the jury delivered a verdict in favor of Defendants Bell, Doss, and Horton on all counts. (Doc. Nos. 157; 160–61.)

On September 18, 2013, Plaintiff moved for a new trial under Federal Rule of Civil Procedure 59(a), alleging certain issues with the jury instructions. (Doc. Nos. 168–69.) Finding that the jury instructions were not misleading, confusing, or prejudicial, the Court denied the motion for a new trial. (Doc. No. 172 at 6–7.)

On August 22, 2014, Plaintiff filed these Motions (Doc. Nos. 173–74) with a Memorandum in Support (Doc. No. 175) and multiple exhibits (Doc. Nos. 175-1–175-12, 176-1–176-2, 177-1, 180-1–180-4). Defendants filed a Response in Opposition to the Motions (Doc. No. 178) and several exhibits (Doc. Nos. 178-1–178-4, 179-1). The Court heard oral arguments on February 11, 2015 and issued a contemporaneous ruling granting the Motions from the bench. (Doc. No. 186 at 19.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) states, in pertinent part, that on motion and just terms, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

To prevail on a Rule 60(b)(2) motion, "a 'movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'" *HDC,*

2

*LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (alteration in original) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)). To prevail on a Rule 60(b)(3) motion, the moving party must "show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question." *Info-Hold, Inc. v. Sound Merch. Inc.*, 538 F.3d 448, 455 (6th Cir. 2008) (alteration in original) (citations and quotations omitted). Most grounds for relief under Rule 60(b) "relate to, if not require, new information about the case that could not reasonably have been discovered earlier." *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 372 (6th Cir. 2007). The party seeking relief under Rule 60(b) must establish the grounds for such relief by clear and convincing evidence. *Info-Hold*, 538 F.3d at 454.

### III. ANALYSIS

#### A. Newly Discovered Evidence

Plaintiff primarily seeks relief under Federal Rule of Civil Procedure 60(b)(2), arguing that the Court should set aside the judgments entered in Defendants' favor and grant a new trial based on newly discovered evidence: namely, former Defendant[1] and correctional officer William Amonette's February 7, 2011 resignation letter.[2] (Doc. No. 175 at 3, 6–7.) The letter[3] reads as follows:

> Warden Bell:
>
> After much thought and consideration, I have determined that it is necessary for me to resign my position with the Tennessee Department of Corrections. My reasons for this are two-fold.

---

[1] *See* Doc. No. 1.

[2] Mr. Amonette videotaped the cell extraction.

[3] Defendants object that the copies of the resignation letter contained in the record are unauthenticated. Because of this case's current procedural posture, the Court finds that absent the opportunity to conduct further discovery, Plaintiff cannot address such an objection.

3

> First, ever since I asked questions in your office about the witnesses in the Charles Toll case that were not spoken to by Internal Affairs, I have been treated poorly by your subordinates when I report to work.
>
> Secondly, I also discovered on February 2, 2011 that the records for my September 2, 2010 core training session were altered to reflect that I had eight (8) hours of training when I only received six (6) and I was told just to sign the time sheet. This is falsification of training records, and I was ridiculed at the time for not wanting to accept eight (8) hours pay for (6) hours work. When I requested a slip to sign for two hours comp time, I was treated as if I was causing an inconvenience. Some guards advised me that they have done as little as four (4) hours training and were paid for eight (8) hours. With the extenuating allegations surrounding proper officer training, I felt it necessary to make you aware of the situation.
>
> To put this simply, I cannot work somewhere where asking questions or trying to do what is right is punished. Please accept this letter as notification of my two week notice of separation.
>
> Sincerely,
>
> William T. Amonette, Jr.

(Doc. Nos. 175-5, 180-1, 180-2.)

First, Plaintiff must show that, despite reasonable diligence, Mr. Amonette's resignation letter could not have been discovered in time to move for a new trial under Rule 59(b). Fed. R. Civ. P. 60(b)(2); *HDC, LLC*, 675 F.3d at 615. Plaintiff's attorneys contend that they reasonably relied on the full production of documents during the discovery phase of this litigation. (*See, e.g.*, Doc. No. 186 at 4.) Indeed, the resignation letter is dated five days after Plaintiff's counsel filed the original complaint and served Rule 34 requests for production of documents upon Defendants Bell and Horton for (1) Mr. Amonette's personnel file, (2) all reports, memoranda, or documents pertaining to Mr. Toll's death, and (3) all emails and other written communications pertaining to Mr. Toll's death. (Doc. Nos. 175-1 ¶¶ 1, 5, 6; 175-7 ¶¶ 4–7; 175-8 ¶¶ 4–7; 175-9 ¶¶ 4–7; 186 at 3.) On April 25, 2011, Defendants' counsel produced the requested documents,

4

including Mr. Amonette's personnel file, from the Tennessee Department of Corrections. (Doc. No. 178-2 ¶ 2.)

Unbelievably, the resignation letter never surfaced until Plaintiff read about it in a *New York Times* article[4] nearly one year after trial.[5] The parties do not dispute that any letter written by then-Defendant Amonette to Defendant Bell should have been produced in response to Plaintiff's Rule 34 requests. In their affidavits, the defense attorneys swear that they do not recall seeing Mr. Amonette's resignation letter during the course of discovery. (Doc. Nos. 178-2 ¶ 3; 178-3 ¶ 3.) In a second affidavit dated September 22, 2014, defense counsel states that "a paralegal in the office has discovered a computer file with an original scanned copy of William Amonette's personnel file and a redacted copy of the personnel file. The resignation letter of Mr. Amonette is not in these computer files." (Doc. No. 179-1 ¶ 2.)

Despite these admissions, in their response opposing Plaintiff's Motions, Defendants impugn Plaintiff's attorneys' due diligence by pointing out that Plaintiff's attorneys failed to inquire about the resignation letter even though Mr. Amonette referenced it in his January 2012 deposition testimony.[6] Plaintiff's attorneys counter that they reasonably relied on Mr. Amonette's testimony about his reasons for resigning, which included his feeling that his

---

[4] Erica Goode, *When Cell Door Opens, Tough Tactics and Risk*, N.Y. Times, July 28, 2014, at A1 *available at* www.nytimes.com/2014/07/29/us/when-cell-door-opens-tough-tactics-and-risk.html. (Doc. No. 175-3.)

[5] After reading about the letter in the *New York Times*, Plaintiff obtained a copy of the resignation letter in August 2014 via e-mail from Neysa Taylor, the Director of Communication for the Tennessee Department of Corrections. (Doc. No. 175-7 ¶ 15.) Plaintiff then forwarded the e-mail and attached letter to her attorneys. (*Id.*) Subsequently, News Channel 5 reporter Ben Hall obtained a second copy of the resignation letter. (*See* Doc. No. 180-4 at 7.)

[6]  Q. [By Attorney Weissman] Did you submit a written resignation letter, Mr. Amonette?
     A. Yeah, with about eight pages on it.
     Q. Okay. Did you keep a copy of that?
     A. Yeah. I gave one to the Department of Corrections, too.
     Q. Okay.
     A. As a matter of fact, it's – it should be in my personnel file.

(Doc. No. 178-4 at 66.)

5

superiors at Riverbend "gave [him] a hard time," issued two write ups, and called him a "smart ass" and "a troublemaker" based on unfounded[7] rumors that he had spoken with Plaintiff's attorney, David Raybin. (Doc. No. 178-4 at 23–26.) Therefore, Plaintiff's attorneys concluded that "[t]he resignation letter based on [Mr. Amonette's] testimony was not particularly significant" and chose not to pursue the letter. (Doc. No. 186 at 4.)

The Court notes that the reasons Mr. Amonette outlined in his resignation letter to Defendant Bell are inconsistent with those presented to Plaintiff's attorneys through his testimony. When questioned as to why he resigned, Mr. Amonette certainly made no mention about "falsification of training records" or witnesses in this case "that were not spoken to by internal affairs." The Court rejects as unreasonable Defendants' argument that "plaintiff, in the exercise of due diligence, could have made a public records request to the State for a copy of Mr. Amonette's resignation letter." (Doc. No. 178 at 5.) The Court finds clear and convincing evidence that Mr. Amonette's resignation letter should have been, but was not, produced during discovery, despite Plaintiff's counsel's due diligence in obtaining it. *See HDC, LLC*, 675 F.3d at 615. The Court further finds that the resignation letter brings to light new information about this case that reasonably could not have been discovered in time to move for a new trial under Rule 59(b). *See GenCorp, Inc*, 477 F.3d at 372. Therefore, Plaintiff has satisfied the first prong of the Rule 60(b)(2) test.

Second, Plaintiff must show that Mr. Amonette's resignation letter constitutes material and controlling evidence that clearly would have produced a different result if presented before

---

[7]     A. I didn't mean to—you know, I didn't want to be a troublemaker. I wanted to be a good guy and get along with everybody and stuff. I've never met Mr. Rayburn [sic].
    Q. I was going to ask you that. I'm assuming you never did speak to him?
    A. No, I did not.

(Doc. No. 178-4 at 26.)

6

Case 3:11-cv-00093   Document 187   Filed 04/06/15   Page 6 of 9 PageID #: 1468

the original judgment. *See HDC, LLC*, 675 F.3d at 615 (quoting *Good*, 149 F.3d at 423). As Plaintiff's attorneys correctly point out, the letter questions the investigation of the events surrounding Mr. Toll's death, including internal affairs' failure to interview certain witnesses, and the alleged falsification of not only Mr. Amonette's training records, but also those of other prison guards. Defendants argue that because this case is fundamentally about the alleged use of excessive force, "the hours of training were not material to the case." (Doc. No. 178 at 7.) However, Plaintiff alleges failure to train in the amended complaint (Doc. No. 52 ¶¶ 113–123) and Defendant Bell testified on the issue of training. The Court finds that Mr. Amonette's newly discovered resignation letter is material evidence that would have assisted the jury in weighing the credibility of the defense witnesses, would have affected depositions and the parties' presentation of trial evidence, and would most likely have led the parties to other material evidence.

As to whether this newly discovered evidence clearly would have produced a different result if presented before the original judgment, the Court considers the affidavit of William Gary Blackburn that Plaintiff submitted in support of her Motions. (Doc. No. 175-6.) Mr. Blackburn is a respected attorney who has practiced law in Tennessee for forty-three years and who has relevant experience from his involvement in many § 1983 cases. Based on this experience, Mr. Blackburn opines that the content of Mr. Amonette's resignation letter is significantly relevant and valuable to the issues in this civil rights case, including the issue of training of corrections officers. (*Id.* ¶¶ 11, 13.) Mr. Blackburn echoes the Court's findings that the letter is material to the credibility of the defense witnesses and substantially material to the presentation of evidence in this case and states that "the outcome of this trial in 2013 would,

7

more likely than not, have been affected by the introduction and use of William Amonette's resignation letter." (*Id.* ¶¶ 11–13.)

Based on the unique facts of this case, the evidence presented in support of these Motions, and the Court's own experience gathered over the past thirty-five years, the Court finds clear and convincing evidence that Mr. Amonette's resignation letter is material, controlling, and clearly would have produced a different result if presented before the original judgment. Therefore, Plaintiff has satisfied the second prong of the Rule 60(b)(2) test and is entitled to relief under this Rule.

### B. *Fraud, Misrepresentation, or Misconduct*

Plaintiff also seeks relief under Federal Rule of Civil Procedure 60(b)(3). In response to Plaintiff's argument that the judgments should be set aside based on fraud, misrepresentation, or misconduct by an opposing party (*see* Doc. Nos. 175 at 7; 180 at 2–3), defense counsel swears that no documents were intentionally withheld from Plaintiff's attorneys during discovery. (Doc. No. 179-1 ¶ 4.) Plaintiff did not allege any specific facts showing deliberate action such as fraud, misrepresentation, or misconduct on Defendants' part. Having studied the record, the Court finds that Plaintiff has fallen short of demonstrating by clear and convincing evidence that Defendants deliberately withheld Mr. Amonette's resignation letter. Therefore, relief under Federal Rule of Civil Procedure 60(b)(3) is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motions and hereby **VACATES** the judgments (Doc. Nos. 162–64) entered in favor of Defendants Bell, Doss, and Horton. Given the facts of this case, the Court finds that such course is required to prevent an injustice.

It is so ORDERED.

Entered this the \_\_\_6\_\_\_ day of April, 2015.

                                                                JOHN T. NIXON, SENIOR JUDGE
                                                                UNITED STATES DISTRICT COURT