**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JANE LUNA, as Administratrix of the** | ) | |
| **Estate of Charles Jason Toll, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:11-cv-0093** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **RICKY BELL, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## <u>MEMORANDUM</u>

Before the court is the defendants' Motion for Summary Judgment. (Doc. No. 269.) The motion has been fully briefed and is ripe for review. For the reasons set forth herein, the court will grant the motion and dismiss this case with prejudice.

## I.    PROCEDURAL BACKGROUND

The plaintiff's decedent, Jason Toll, died during a cell extraction and strip search at Riverbend Maximum Security Institution ("RMSI"), in Nashville, Tennessee, in 2010. The court presumes familiarity with the transcript of the trial in this matter, conducted in August 2013 (*see* Trial Tr., Doc. Nos. 201–09), and will not reiterate the evidentiary background here except as strictly necessary to discuss the claims at issue.

In 2011, Jane Luna, Toll's mother, brought this action as administratrix of her son's estate against nine correctional officers who were allegedly personally involved in the incident, as well as against Ricky Bell, then warden of RMSI. (Compl., Doc. No. 1.) The plaintiff asserted claims under 42 U.S.C. § 1983 against the correctional officers who were involved in the cell extraction for the use of excessive force and against Warden Bell, in his individual capacity, for

failure to train and supervise. In an Amended Complaint filed in October 2012, the plaintiff voluntarily abandoned her claims against two of the nine officer defendants. (Am. Compl., Doc. No. 52.) Prior to trial, she voluntarily dismissed the claims against five of the remaining seven individual officers, leaving only the claims against Officer Gaelan Doss, Captain James Horton, and Warden Bell to proceed to trial. (*See* Doc. No. 152 (Order granting oral Motion to Dismiss defendants Reckart, Jackson, Stewart, Freeman, and Bishop).)

Senior Judge John T. Nixon, now retired, conducted a nine-day trial beginning on August 13, 2013. The jury returned verdicts in favor of the defendants, specifically concluding that Doss and Horton did not violate Toll's constitutional right to be free from the use of excessive force during the cell extraction and that Bell did not violate Toll's constitutional rights by failing to adequately train the corrections officers involved in the cell extraction. (*See* Redacted Verdict Forms, Doc. Nos. 157, 160, 161.) The court thereafter denied the plaintiff's timely Rule 59(a) Motion for a New Trial (Doc. Nos. 168, 172.)

Nearly a year later, the plaintiff filed a Motion to Reopen Case (Doc. No. 173) and Rule 60(b) Omnibus Motion for Relief from Judgments (Doc. No. 174). The court granted relief under Rule 60(b)(2), on the basis that the plaintiff was in possession of newly discovered evidence— namely, the February 7, 2011 resignation letter of former defendant and correctional officer William Amonette ("resignation letter").[1] The court found that the plaintiff had established that, despite reasonable diligence, the resignation letter could not have been discovered in time to move for a new trial under Rule 59(b) and that the letter constituted material and controlling evidence which, if it had been produced in time to be introduced into evidence at trial, would

---

[1] Amonette was one of the two officers who were named as defendants in the original Complaint but not the Amended Complaint. While he was technically part of the team conducting the cell extraction, his only role was to videotape the entire incident.

have produced a different result at trial. In ruling on the motion, the court found that the "newly discovered resignation letter is material evidence that would have assisted the jury in weighing the credibility of the defense witnesses, would have affected depositions and the parties' presentation of trial evidence, and would most likely have led the parties to other material evidence." (Order, Doc. No. 187, at 7.) The court specifically did *not* find fraud, misrepresentation or misconduct by the defendants or their attorneys.

Following entry of the Order granting relief, the Judgments in favor of the defendants were vacated. Judge Nixon recused himself, and the matter was reassigned to Judge Todd Campbell. The defendants promptly filed a Rule 59 motion, seeking reconsideration of the Order granting a new trial. (Doc. No. 191.) Judge Campbell denied the motion. (Doc. No. 198.) The court also denied the plaintiff's Motion for Sanctions (Doc. No. 213), finding no evidence that the defendants or their counsel acted in bad faith. (Doc. Nos. 256 (Report and Recommendation) and 261 (Order adopting Report and Recommendation).) Meanwhile, new Case Management Orders were entered, setting a trial date as well as deadlines for amending pleadings, discovery, and the filing of dispositive motions. In November 2016, with the retirement of Judge Campbell, this case was transferred to the undersigned.

In early 2017, the defendants filed a Rule 54(b) Motion to Reconsider Order Vacating Jury Verdict (Doc. No. 271), as well as their Motion for Summary Judgment (Doc. No. 268). The court denied the Rule 54(b) motion, finding that the defendants did not carry their burden but noting that the substantive issues raised therein could be addressed in the context of the also-pending Motion for Summary Judgment.

The plaintiff filed a Response in Opposition to the Motion for Summary Judgment, arguing that disputed issues of fact preclude summary judgment in favor of any of the

defendants. In this response, the plaintiff relies entirely upon the trial transcript; she does not reference Amonette's resignation letter or any other new evidence; she does not suggest how the resignation letter calls into question any of the evidence offered at the 2013 trial of this matter. Consequently, the court entered an order directing her to file a sur-reply that "cites to evidence other than what was introduced at trial. Plaintiff's Motion for New Trial was granted on the basis of new evidence. Plaintiff risks the granting of this Motion for Summary Judgment should the Sur-Reply not convince the court that a new trial is warranted." (Doc. No. 288.)

The plaintiff filed her Sur-Reply (Doc. No. 290), in which she refers to the resignation letter and quotes extensively from the transcript of Amonette's September 12, 2015 sworn Statement on the Record ("Statement") (Doc. No. 222-4).[2]

## II.    LEGAL STANDARD

The motion before the court stands in a highly unusual procedural posture. Typically, of course, Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There clearly are disputed issues of fact in this case—that is why it went to trial in the first place. The jury, however, resolved those factual disputes in the first trial in favor of the defendants. The court granted a new trial based on the new evidence that, the plaintiff claimed, "could have substantially affected the credibility of every witness who testified." (Doc. No. 175, at 6.)

---

[2] This Statement, given under oath, is essentially an *ex parte* deposition with the same evidentiary value as a sworn declaration or affidavit. The court may consider the Statement for purposes of ruling on a motion for summary judgment to the same extent as a declaration or affidavit. *See* Fed. R. Civ. P. 56(c)(1)(A) (providing that materials in the record that parties may rely upon in support of their factual assertions include "depositions, documents, . . . affidavits or declarations . . . or other materials").

Thus, the question implicit in the defendants' Motion for Summary Judgment is whether the plaintiff's new evidence is sufficient to call into doubt the credibility of any of the witnesses on a material matter or to cast any of the evidence offered at trial in a different light, such that a new trial is actually warranted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Id.* at 252.

## III.   ANALYSIS

In their motion, the defendants argue that (1) any claim against Bell in his official capacity is barred by the Eleventh Amendment; (2) the plaintiff cannot establish that Doss and Horton engaged in the use of excessive force; (3) because the plaintiff cannot establish a constitutional violation by Doss and Horton, the failure-to-train claim against Bell necessarily fails; (4) even if a question of fact exists as to the use of excessive force, a supervisor cannot be individually liable under § 1983 for failure to train; and (5) Bell was not directly involved in and had no knowledge of the cell extraction and, therefore, cannot be individually liable for the use of excessive force.

In response, the plaintiff points out, first, that Bell was never sued in his official capacity, only in his individual capacity. She insists, however, that (1) the facts show that Doss and Horton used excessive force during the cell extraction, thus violating Toll's constitutional rights; (2) Bell failed to train and supervise his correctional officers in the use of excessive force and cell extractions, and this failure violated Toll's constitutional rights insofar as it directly caused or contributed to Toll's death; and (3) the defendants are not entitled to qualified immunity.

In her Sur-reply, the plaintiff asserts that Amonette's resignation letter and Statement "bolster" her failure-to-train claim against Bell. (Doc. No. 290, at 3.) In addition, she argues very generally that the new evidence calls into question the credibility of unspecified witnesses. Her filing states:

> [T]his information will impact how Plaintiff examines several witnesses in this case, including Defendant Bell. This information questions the credibility of these witnesses and directly relates to Plaintiff's failure to train claim. Further, should the credibility of these witnesses be called into question, it would permeate throughout the entire trial.

(*Id.*)

Regarding the defendants' first argument, the court finds that the Amended Complaint clearly asserts a claim against defendant Bell in his individual capacity only. Because the plaintiff never stated a claim against him in his official capacity, the defendants cannot bar the claim against him based on the Eleventh Amendment. Likewise, it is clear that the plaintiff did not intend to state a claim against Bell in his individual capacity for the actual use by him of excessive force. Rather, the claim against him is based solely on a failure to train the employees under his supervision. (*See* Proposed Joint Pretrial Order,[3] Doc. No. 118, at 10 (identifying as Question 10 for the jury: "Whether former Warden Ricky Bell is liable for failure to train the officers which resulted in inmate Tolls' constitutional rights being violated by the use of excessive force in the incident on August 17, 2010?").)

However, as discussed in greater detail below, the court finds that the plaintiff has not shown that her new evidence affects or calls into question the jury's previous determination that defendants Doss and Horton did not violate Toll's constitutional rights. As a result, even

---

[3] It does not appear that the parties' Proposed Joint Pretrial Order was ever entered prior to trial. However, the Proposed Order clearly states the parties' joint intent that it supplant the pleadings and that the pleadings be amended to conform with the Proposed Order. (Doc. No. 118, at 1.)

assuming that Bell acted with deliberate indifference in failing to ensure that his staff was adequately trained in the performance of cell extractions, the court must conclude that his failure in that regard did not result in a constitutional violation. As a result, he cannot be liable under § 1983 for failure to train.

### A.     The Excessive Force Claim

An Eighth Amendment excessive-force claim demands an examination of "the state of mind of the prison officials. The relevant inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).[4] Under this standard, the plaintiff's burden at trial was to prove both that the defendants used force maliciously and sadistically and that their use of force actually caused Toll's death.[5]

The jury unanimously determined that Doss and Horton did not violate Toll's right to be free from the use of excessive force during the cell extraction. In other words, based on the evidence before it at the time, the jury resolved all material factual disputes in favor of the defendants. The question now is whether the plaintiff's new evidence puts that resolution in doubt. The answer: it does not. In her Response to the Defendants' Statement of Undisputed

---

[4] The Supreme Court recently confirmed that courts analyzing an excessive-force claim by a pretrial detainee under the Fourth Amendment must use an objective standard only: that the force "purposely or knowingly used . . . was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). For now, at least, the subjective standard still applies to Eighth Amendment claims. *See Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

[5] The manner and cause of death were hotly disputed by the parties' experts. The plaintiff's expert testified that the manner of death was homicide and that the cause of death was asphyxia during physical restraint. (*See* Doc. No. 202, at 122.) The plaintiff's expert was largely discredited in cross-examination (*see id.* at 130–56), and the defendants' expert testified that the manner of death was undetermined and that the cause of death was not asphyxia but sudden cardiac arrest. (Doc. No. 206, at 109.)

Facts, the plaintiff contends that there are numerous factual disputes relating specifically to the question of whether Toll and/or Horton used excessive force during the cell extraction and strip search of Toll. (Doc. No. 282 ¶¶ 45–53, 55–57, 60–65, 67–72, 75–77, 80–81.) The plaintiff also filed her own Additional Material Facts in Support of Her Response in Opposition to Defendants' Motion for Summary Judgment.[6] (Doc. No. 283.) But in support of her factual contentions in both of these documents, the plaintiff cites exclusively to the trial transcript and the videotape of the August 17, 2010 cell extraction, which was also introduced at trial. She makes no reference to Amonette's Statement or resignation letter.

Moreover, although she argues very generally in her Sur-reply that the Statement "will impact how Plaintiff examines several witnesses in this case" and "questions the credibility of these witnesses" in a way that will affect the "entire trial," she does not specifically identify any witnesses, other than Bell, whose credibility would be called into question. Bell himself was not involved in the cell extraction, did not authorize it or know that it was taking place, and was not even at the prison on the night it happened, so his credibility would have no impact on the excessive-force claim.

Further, while it is certainly true that the court may not resolve a credibility dispute on summary judgment, *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), this rule applies only "where there is a *genuine* conflict in the evidence, with affirmative support on both sides, and where the question is which

---

[6] The court rejects the defendants' arguments that this filing constitutes an improper statement of *undisputed* facts that is not authorized by Local Rule 56.01(c). The court construes the filing as setting forth facts as to which the plaintiff contends there is a factual dispute, as contemplated by the local rule, in an attempt to defeat summary judgment. *See Anderson v. McIntosh Const., LLC*, No. 3:13-CV-0304, 2014 WL 2207924, at *2 (M.D. Tenn. May 28, 2014) ("Local Rule 56.01(c) permits a plaintiff to file a responsive statement of disputed facts in an effort to avoid the grant of summary judgment."), *aff'd*, 597 F. App'x 313 (6th Cir. 2015).

witness to believe." *Id.* (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2726, at 447 (3d ed. 1998) ("Thus, for example, if conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses."); *Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 548 (6th Cir. 2013) (summary judgment inappropriate given "differing verbal accounts of what transpired inside the apartment")). Here, the plaintiff has not pointed to any statement by Amonette that directly contradicts the testimony of any particular witness on issues that are relevant to the determination of whether the officers used excessive force. In fact, in his Statement, Amonette expressly denied that any of the corrections officers intentionally violated Toll's rights. (*See* Statement, Doc. No. 222-4, at 13 (stating his opinion that Toll's death resulted from "oversight, you know, it was a lot of things that went wrong that day"); *id.* at 21 (stating that he did not "believe . . . that anybody did anything willfully wrong").)[7] Thus, the plaintiff's vague assertion that Amonette's Statement and resignation letter affect the credibility of every witness at trial is insufficient to establish that the plaintiff is entitled to a new trial on the issue of Doss's and Horton's liability for the use of excessive force.

The procedural limbo of this case does not lend itself to easy application of the ordinary standards for resolving motions for summary judgment. Here, as previously indicated, there clearly are—or were—a number of material factual disputes regarding the excessive-force claim. The jury resolved those disputes in favor of the defendants. Although the new evidence upon

---

[7] Interestingly, plaintiff's counsel, in his questioning of Amonette for purposes of the Statement, stated unequivocally, "[W]e are not even accusing anybody of anything willfully wrong." (Statement, Doc. No. 222-4, at 22.) Counsel's disclaimer in the context of Amonette's Statement is not necessarily binding on his client, but the court nonetheless finds that it is likely indicative of counsel's own assessment of the evidence.

which the plaintiff's Rule 60(b) motion was premised largely implicated only the question of training, the trial court granted the motion as to all of the plaintiff's claims and reopened discovery. Judge Nixon's decisions—both to grant a new trial on all issues and to reopen discovery—were presumably based on an assumption that the new evidence would lead to additional undiscovered evidence.

That assumption has now been proven false, both because the plaintiff never took additional discovery and because she has failed to show how Amonette's Statement or resignation letter—the only new evidence in the record—has any impact on any of the evidence concerning the defendants' alleged use of excessive force or the cause of Toll's death. Under these circumstances, the plaintiff is not entitled to another bite at that apple, and the court will grant summary judgment in favor of defendants Horton and Doss.

### B.      Failure to Train

The defendants are simply incorrect in asserting that a supervisor can *never* be individually liable under § 1983. *See, e.g.*, *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 80–81 (6th Cir. 1995) ("It is true, as the Supreme Court has stated, that in a § 1983 action liability cannot be based on a theory of respondeat superior. However, this does not automatically mean that a supervisor can never incur liability under § 1983." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). To establish a § 1983 claim of personal liability for a failure to train and supervise—as distinct from a § 1983 claim against a municipality for a failure to train and supervise—a plaintiff must show

> that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*

*Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015) (quoting *Taylor*, 69 F.3d at 81, and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). *Accord Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) ("[W]hereas the County's liability [for failure to train] may be premised on its policymaker's deliberate indifference, neither of the individual defendants . . . can be held liable in his individual capacity [on a failure to train theory] unless he either encouraged the specific incident of misconduct or in some other way directly participated in it." (citation omitted)); *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) ("While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, the [plaintiff] must point to a specific action of each individual supervisor to defeat a qualified immunity claim.").

As part of the inquiry into whether the defendant was personally involved in the "specific incident of misconduct," the court must consider "whether there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). This causal connection is required by the text of § 1983 itself:

> A close reading of § 1983 affirms this point. The statute states that every person acting under color of law who "subjects, or *causes* [a person] to be subjected" to deprivation of constitutional rights "shall be liable to the party injured[.]" Accordingly, where an official's execution of his or her job function causes injury to the plaintiff, the official may be liable under the supervisory-liability theory.

*Id.* (quoting 42 U.S.C. § 1983) (emphasis in original).

In this case, for purposes of the Motion for Summary Judgment, the court presumes that the plaintiff's new evidence is sufficient at least to create a material factual dispute as to whether the corrections officers involved in Toll's cell extraction had received adequate training and as to whether Bell, acting in his individual capacity, "abandon[ed] the specific duties of his position . . . in the face of actual knowledge" that the necessary training was not being done and

that the lack of such training gave rise to an unacceptably high risk of injury and death to inmates during cell extractions. *See Taylor*, 69 F.3d at 81 (quoting *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992)).

Even under such circumstances, however, Bell is entitled to summary judgment in his favor on the failure-to-train claim, because the plaintiff cannot show a causal connection between Bell's failures and Toll's injury. To be more precise, as set forth above, the plaintiff has not established that Toll suffered a constitutional injury. Certainly, the facts in this case may evince a deplorable level of negligence on the part of every party involved in the cell extraction, but mere negligence is not sufficient to support a cause of action under 42 U.S.C. § 1983. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))).

Because the plaintiff failed to prove that Doss and Horton violated Toll's constitutional rights, she necessarily cannot establish that Bell's failure to ensure adequate training *caused* any such violation. Summary judgment in Bell's favor on the failure-to-train claim is therefore warranted. *Accord Peatross*, 818 F.3d at 242 ("[W]here an official's execution of his or her job function *causes injury* to the plaintiff, the official may be liable under the supervisory-liability theory." (emphasis added)).  *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point."); *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) ("[O]ur conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well.").

**IV.    CONCLUSION**

For the reasons set forth herein, the defendant's Motion for Summary Judgment will be granted and this action, dismissed. An appropriate order is filed herewith.


ALETA A. TRAUGER
United States District Judge